### JOHNSON *a.* McDONALD.

*Supreme Court, First District; General Term, October,* 1855.

#### AFFIDAVIT.—LIMITED PARTNERSHIP.

An affidavit, to accompany a certificate of a limited partnership, (under 2 *Rev. Stats.*, 4 ed. 174, § 7) need not follow the exact words of the statute. If it clearly establishes the facts required by the statute, it is sufficient.

Where the affidavit refers to the certificate, it may be explained by the statements of the certificate.

An affidavit that the special partner has "actually paid in," the capital contributed by him, is equivalent to an affidavit that he has paid it in "in cash."

Appeal from a judgment entered on the report of a referee.

MORRIS, J.—On July 22, 1843, the defendants, Richard McDonald and Alexander McDonald, and one Charles Duffy, (who afterwards, and in the year 1848, died) formed a copartnership in the business of manufacturing or distilling and sell-

ing camphene and alcohol, and purchasing materials necessary and proper for manufacturing or distilling the same; the co-partnership was to commence on the 22d of July, 1843, and was to terminate on the 26th of July, 1846; the name of the firm was McDonald & Duffy. The firm failed after making the purchases and giving the notes hereinafter mentioned. The failure occurred early in 1845.

The plaintiffs, and one William M. Johnson, (since deceased) at the time of the purchases, and of the giving of the notes by McDonald & Duffy, hereinafter mentioned, were partners, doing business under the firm name of Wm. Johnson & Sons. *On the 1st of February*, 1845, there was partly due from the firm of McDonald & Duffy, to the firm of Wm. M. Johnson & Sons, for liquors, before then sold and delivered to the former, at their special instance and request, by the latter, the sum of six hundred and eighty-five dollars and thirty-three cents. *On the 15th of February*, 1845, Wm. M. Johnson & Sons sold and delivered to McDonald & Duffy, nineteen hogsheads of whiskey, and on the nineteenth of the same February, five other hogsheads of whiskey, and McDonald & Duffy agreed to pay for the nineteen hogsheads, eight hundred and nineteen dollars and ninety-five cents, and for the five hogsheads, two hundred and six dollars and seventeen cents. These sales were made on the terms that said whiskey was to be paid for on delivery. McDonald & Duffy paid on account, on the 11th of February, two hundred dollars, and between that day and the 17th of February, five hundred and seventeen dollars, in the aggregate; but paid no more on account. Besides the purchases before named, the firm of McDonald & Duffy, made and delivered to Wm. M. Johnson & Sons, their two notes, each of which was payable four months after its date, to the order of Wm. M. Johnson & Sons, one of which was dated Nov. 8, 1844, and was for the sum of four hundred and seventy-one dollars and ninety-eight cents, and the other was dated January 30, 1845, and was for the sum of five hundred and fifty-six dollars and fourteen cents, no part of either of which has been paid, and both of which are, and at the time of the commencement of this action were, held and owned by the

plaintiffs as surviving members of the firm of Wm. M. Johnson & Sons.

The defendants and Charles Duffy, on forming the firm of McDonald & Duffy, attempted to form a limited partnership, in which Alexander C. McDonald and Charles Duffy were to be the general partners, and Richard McDonald a special partner. Richard McDonald was to contribute one thousand dollars to the common stock.

On the 22d of July, 1843, Richard McDonald, Alexander C. McDonald, and Charles Duffy, made and severally signed a certificate in writing, dated that day, which certificate stated accurately the name of the firm under which the partnership was to be conducted, the general nature of the business to be transacted, and also that "the said Richard McDonald is the only special partner, and the said Alexander C. McDonald and Charles Duffy, are all the general partners interested in said firm, *and said Richard has* contributed one thousand dollars to the common stock, *and has actually and in good faith paid in the same in cash.*" It stated the place of residence of each of the partners, at what time the partnership was to commence and to terminate, and the execution of it was duly acknowledged by each of them on the 22d of July, 1843, before a commissioner of deeds, who endorsed on said certificate his certificate of acknowledgment in due form of law. The certificate, so acknowledged and certified, together with an affidavit annexed thereto, made by Charles Duffy, was filed in the office of the Clerk of the city and county of New York, on the 22d of July, 1843, that being the county in which the principal place of business of said partnership was situated, which said affidavit read as follows :—

*City and County of New York, ss.*   Charles Duffy, of the City and County of New York, one of the general partners in the within named firm of McDonald & Duffy, being duly sworn, says, that the within Richard McDonald, of New Brunswick, New Jersey, the said special partner in said firm, *has contributed and actually paid in, in good faith, to the common stock of said firm, the sum of one thousand dollars, the same*

*being the sum specified in the within certificate,* signed by the partners in said firm, as having been contributed by him as special partner thereof. CHARLES DUFFY.

JURAT.

The certificate and acknowledgment thereof were recorded, and the terms of the partnership were published, as required by law.

The defendant, Richard McDonald, offered to prove on the trial, that on the 22d of July, 1843, he contributed, as special partner, to the common stock of said partnership, and actually and in good faith, paid in, one thousand dollars, in bank bills of the State Bank of New Brunswick, New Jersey, and that said bills were at par in the city of New York. The plaintiff's counsel objected to the admissibility of this evidence. The referee sustained the objection, and refused to receive the evidence, to which decision the counsel of said Richard McDonald then and there excepted.

The question presented by this exception is, whether the affidavit of Duffy, the general partner, that Richard McDonald, the special partner, " has contributed and *actually paid in,* in good faith, to the common stock of said firm, the sum of one thousand dollars, *the same being the sum specified in the within certificate,* signed by the partners in said firm, as having been contributed by him as special partner thereof," is a sufficient compliance with the statute to authorize the defendant, Richard, to show, upon the trial, that he had, in truth, paid that amount in cash to the capital of the firm. The only difference between the words of the statute, and of those of the affidavit, is the omission to copy into the affidavit the word " cash," contained in the statute immediately after the words " paid in."

It is not necessary that the affidavit should follow the exact words of the statute. If the words of the affidavit, clearly and without doubt or question, establish the facts required by the statute, it is sufficient.

Did the affidavit contain the words " paid in specie," " paid in current bank bills," there could be no doubt it would be a statement of the fact that " it was paid in cash," and would be full compliance with the requirements of the statute.

Lentz a. Craig.

In this case, the affidavit of the general partner *refers expressly to the certificate* of the special partner, and makes that certificate a part of his affidavit; it states that the special partner "has contributed and actually paid in, in good faith, to the common stock of the firm, the sum of one thousand dollars, *the same being the sum specified in the within certificate,*" and the certificate referred to and filed with the affidavit, certifies that "*the said Richard has contributed* one thousand dollars to the common stock, *and has actually, and in good faith paid in the same in cash.*" The general partner would be guilty of perjury in his affidavit, if the thousand dollars had not been paid in cash.

In addition to this, in my judgment, the affidavit, taken by itself, legally means "paid in cash."

What is the legal meaning of "paid in"? Can those words mean, legally, anything else, than "paid in cash"?

Under the old plea of payments, you could only give in evidence payment of cash. If you had let the defendant have goods and merchandise, you were obliged to offset it. If you had settled with plaintiff by turning out to him goods in full satisfaction, you were obliged so to plead it, and could not give it in evidence under a plea of payment.

The affidavit in this case is sufficient.

Judgment should be set aside, and new trial ordered.

---

## LENTZ a. CRAIG.

*Supreme Court, First District; Special Term, November,* 1855.

### REAL ESTATE—RE-SALE.

Under what circumstances, and on what terms, a re-sale of real property sold at a judicial sale, will be ordered.

Application for a re-sale of real property.

MITCHELL, J.—At the sale of the premises in this case, they were struck off to Storkill for $6,850.